In re WILLIAM H. HERR,
INC., Debtor.

Martin I. KATZ, Trustee for William H.
Herr, Inc., Plaintiff,

v.

905 MADISON ASSOCIATES,
Defendant.

Bankruptcy No. 84–02506G.
Adv. No. 85–0677G.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 30, 1986.

Mark A. Kompa, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for plaintiff/trustee, Martin I. Katz.

David C. Corujo, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendant, 905 Madison Associates.

Jonathan H. Ganz, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for debtor, William H. Herr, Inc.

Martin I. Katz, Ft. Washington, Pa., Trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The nub of the controversy in the case at hand is the size of an administrative expense owing to a debtor's landlord due to the debtor's detention of the leasehold after the filing of the petition. On the basis of the facts presented, we conclude that the landlord is entitled to an administrative expense in the amount of $11,247.76.

We set forth the facts of the case as follows:[1] The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code on August 1, 1984. Shortly thereafter a trustee was appointed.

Five years ago the debtor leased, from 905 Madison Associates ("Madison"), a parcel of improved realty on which to conduct its business. The debtor filed a motion on October 3, 1984, for leave to reject this unexpired lease. Although we granted the motion on October 29, 1984, the debtor failed to surrender the premises until several months later and, during this period of sufferance, rent accrued in the amount of $8,437.50, while pro-rated real estate taxes, insurance charges and maintenance fees accrued in the amount of $1,278.65. Pro-rated sewer rent accrued during this term in the amount of $98.50 and during this period, the property was damaged, causing Madison to expend $1,433.11 to return it to its former condition. The foregoing

charges total $11,247.76. In partial payment of this sum the trustee disbursed $6,488.00 during the period the property was held by the estate. During the term of sufferance the debtor conducted no business on the property.

Several months after the surrender of the property Madison applied for the allowance of administrative expenses in the amount of $11,247.76. The trustee not only opposed the motion but sought the return of the $6,488.00 previously disbursed. Madison's position in this dispute is that the trustee's detention of the property after the rejection of the unexpired lease is a cost of administration. The trustee posits that since no postpetition business was conducted on the premises, the detention of the realty was not a reasonable and necessary cost of doing business within the meaning of 11 U.S.C. § 503(b)(1)(A).[2]

One of the primary goals for a typical debtor in filing for bankruptcy is the release of burdensome prepetition liabilities whether they be liquidated, unliquidated, contingent, disputed or otherwise. 11 U.S.C. §§ 727, 1141 and 1328 (the discharge provisions of chapter 7, 11 and 13, respectively), and 11 U.S.C. § 502(c) (estimation of unliquidated or contingent liabilities). The Code also provides for the release of certain liabilities which continue to accrue after the filing of the petition, such as those arising under executory contracts and unexpired leases. 11 U.S.C. § 365. The debtor is given the option of rejecting such agreements or affirming them. In rejection, the debtor disavows further liability *under* a lease or contract with the result that liability under the agreement is treated as a prepetition claim. § 365(g) (see refinements of this rule in other provi-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

2. § 503. Allowance of administrative expenses
    (a) An entity may file a request for payment of an administrative expense.
    (b) After notice and a hearing, there shall be allowed administrative expenses, other

than claims allowed under section 502(f) of this title, including—
    (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

\*    \*    \*    \*    \*    \*

11 U.S.C. § 503(a) and (b) (in part).

sions of § 365). After a debtor assumes an executory contract or unexpired lease, any default in the agreement during the pendency of the bankruptcy is considered a postpetition liability which is a cost of administration. Even after rejection of an executory contract or unexpired lease, postpetition liability may arise against the debtor in "connection with" the agreement, although, strictly speaking, the obligation does not arise "under" the agreement. § 503(b)(1)(A); *In Re C & L Country Market, Inc.,* 52 B.R. 61 (Bankr.E.D.Pa.1985). In such instances, liability does not accrue under the terms of the agreement, but only to the extent of "the actual, necessary costs and expenses of preserving the estate...." § 503(b)(1)(A). Nonetheless, the contract or lease may act as a reference for calculating the size of the administrative claim. For instance, in calculating the amount of an administrative expense, "absent any evidence to the contrary, the court may presume that the contractual rent is a fair and reasonable charge for the use of the premises." *C & L Country Market, supra.* (under the facts of the case the debtor overcame the presumption.)

█ As applied to the case at bench we conclude that the presumption quoted from *C & L Country Market* is applicable to the case before us. Hence, we expressly find that the necessary costs and expenses of preserving the estate borne by Madison equal $11,247.76.

In hopes of averting this conclusion the trustee contended that none of the debtor's business was conducted on the realty in question after rejection of the leases, and thus the cost of the leasehold during that time was not a reasonable and necessary cost of preserving the estate. In support of his position he cites, *inter alia,* an opinion written by us, *C & L Country Market, supra.* In that case a landlord leased a parcel of improved realty to two principals of a corporate debtor. The improvements on the realty sheltered and preserved perishable goods on the property. Shortly thereafter, the debtor filed a chapter 7 petition and a trustee was appointed. The debtor then surrendered the premises leaving the goods. The lease was deemed abandoned shortly thereafter. After significant delay by both the trustee and the landlord the goods were moved to other quarters and sold at auction for $7,000.00. The landlord was then allowed to retake the premises. The landlord asserted that the post-rejection rent which accrued was a necessary cost of preserving assets of the estate. We found that the trustee's claim for $44,081.67 in post-rejection rent was wildly disproportionate to the $7,000.00 of assets which were preserved. On several bases—(1) the disparity between the $44,081.67 and $7,000.00 figures, (2) the fact that the lease ran between the landlord and the debtor's principals, rather than the debtor, and (3) the fact that both the trustee and the landlord were lax in pressing for an ultimate disposition of the realty—we held that "in the absence of countervailing circumstances, the actual, necessary costs and expenses of preserving assets of the estate under § 503(b)(1)(A) cannot exceed the value of those assets." 52 B.R. at 63.

█ We conclude that *C & L Country Market* is inapplicable to the current dispute since, in the case now before us, (1) the lease was between the debtor and the landlord, (2) the trustee has zealously sought repossession of the premises, and (3) the landlord is seeking the total value of the leasehold rather than just the value of preserving assets on the premises. We also hold that simply because the debtor is not conducting business on leased realty after rejection of the lease does not foreclose liability to the estate on an administrative claim for detention of the realty. A contrary result would encourage the questionable practice of a trustee's rejection of a lease *with* retention of the realty, coupled with the trustee's assertion that the premises were *not* needed. The contradiction is obvious and a trustee who takes such a stance may find himself the target of a landlord's suit focusing on whether the detrimental retention of an unnecessary asset constitutes negligence.

Our second point for resolution is whether we should grant the trustee's request that Madison return the $6,488.00 previously advanced in satisfaction of the post-rejection rent. We see no reason to compel the return of the money unless it is ultimately necessary to prorate administrative expenses. If necessary we will address that issue in further detail at a later time.