**In re DIECKHAUS STATIONERS OF KING OF PRUSSIA, INC. a/k/a Dieckhaus Stationers, a/k/a Dieckhaus Stationers, Inc., Debtors.**

**Bankruptcy No. 86–05671F.**

United States Bankruptcy Court, E.D. Pennyslvania.

May 29, 1987.

Anthony L.V. Picciotti, West Chester, Pa., for the debtor, Dieckhaus Stationers of King of Prussia.

David I. Grunfeld, Rosenwald, Pollack and Grunfeld, Philadelphia, Pa., for landlord/objector, King of Prussia Associates, Inc.

## OPINION

BRUCE FOX, Bankruptcy Judge:

The debtor, Dieckhaus Stationers, Inc., has filed a motion to convert this chapter 11 bankruptcy case to chapter 7. The debtor's former landlord, King of Prussia Associates, Inc. ("the landlord"), objects to the conversion. Also, the landlord has filed a motion to compel the debtor to timely perform its obligations pursuant to 11 U.S.C. § 365(d)(3). Specifically, the landlord requests that the court direct the debtor to make immediate payment of all rentals falling due under its nonresidential lease with the debtor for the period between the filing of the bankruptcy petition and the debtor's surrender of the premises to the landlord.

For the reasons set forth below, I will (1) grant the debtor's motion to convert this case to chapter 7; (2) declare the existence of an automatic administrative claim in favor of the landlord in the amount of the post-petition rentals; and (3) direct the chapter 7 trustee to make immediate payment of the landlord's administrative claim subject to the estate's right to recover the payment, or part thereof, if the debtor's assets are insufficient to pay all other administrative expense claims in full.

### I.

The facts in this case are undisputed. On January 7, 1982, the debtor and the landlord entered into a lease agreement for the rental of a store in the King of Prussia Plaza in King of Prussia, Pa. The lease was for a term ending on March 31, 1987.

On December 11, 1986, the debtor filed a voluntary petition under chapter 11. After January 1, 1987, the debtor promoted a going out of business sale for a few days until the mall management asked that the advertising be changed. Thereafter, until shortly before the time the store closed, the debtor advertised that it was "going commercial, all merchandise must go, up to 40% off, all sales final."

The debtor made no payments to the landlord after the filing of the bankruptcy petition. On January 27, 1987, the landlord filed a motion for relief from automatic stay and/or to compel debtor to timely perform obligations pursuant to 11 U.S.C. § 365(d)(3). The debtor surrendered the premises to the landlord on January 31, 1987. On January 21, 1987, a few days before the landlord filed its motion for relief under sections 362(d) and 365(d)(3), the debtor filed a motion, pursuant to 11 U.S.C. § 1112(a), to convert this case from chapter 11 to chapter 7. The debtor filed an answer to the landlord's motion and the landlord filed an objection to the debtor's motion.

A hearing was held on both motions on March 18, 1987. At that time, the parties agreed that the amount of rent falling due between December 11, 1986 and January 31, 1987 is $4,987.23. The parties have also recognized that the motion for relief from the automatic stay is no longer at issue.

### II.

■ I will first address the motion to convert. Section 1112(a) provides:

The debtor may convert a case under this chapter to a case under chapter 7 of this title unless –

(1) the debtor is not a debtor in possession;

(2) the case originally was commenced as an involuntary case under this chapter; or

(3) the case was converted to a case under this chapter other than on the debtor's request.

In opposing the debtor's motion, the landlord argues that the court should exercise its discretion under section 1112(b) to deny the conversion motion because such a denial would be in the best interest of the creditors. The fallacy in this argument is that the debtor is proceeding under section 1112(a), not section 1112(b). The former provision, by its terms, gives the debtor an absolute right to convert, unless the case is governed by one of the enumerated exceptions. The legislative history confirms Congress' intent to give debtors an absolute right to convert from chapter 11 to chapter 7. S.Rep. No. 95–989, 95th Cong., 2d Sess. 117 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 405 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *accord,* 5 *Collier on Bankruptcy* ¶ 1112.03 (15th ed. 1987).

The landlord also argues that the debtor is no longer a "debtor in possession" because it surrendered the leasehold premises and therefore, cannot convert as of right. *See* 11 U.S.C. § 1112(a)(1). This argument, too, overlooks the plain language of the statute. The Code states that debtor in possession "means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case." 11 U.S.C. § 1101(1). Since no trustee has been appointed in this case, the debtor is still a debtor in possession. It is immaterial under the Code that one of its assets, perhaps even its major asset, has been surrendered. *See generally Kotts v. Westphal,* 746 F.2d 1329 (8th Cir.1984); *Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983).

For these reasons, the landlord's opposition to the debtor's motion is without merit and the motion will be granted.

### III.

■ The landlord's motion to compel immediate payment of the post-petition rental is based on 11 U.S.C. § 365(d)(3), which provides, in pertinent part:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.

Section 365(d)(3) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA"). In order to understand the purpose and effect of section 365(d)(3), it is helpful to first analyze the operation of section 365 with respect to lessors prior to BAFJA.

As one court has explained:

Prior to the 1984 amendments, the Code treated unexpired leases differently in Chapter 7 than in Chapters 9, 11 and 13. In Chapter 7, the trustee was allowed 60 days to make the decision whether to assume an unexpired lease. If the trustee did not assume or reject within the 60–day period, the lease was deemed rejected. However, the trustee could obtain additional time to assume or reject "for cause" within the 60–day period. In a reorganization proceeding under Chapter 9, 11, or 13, the debtor in possession or trustee could assume or reject an unexpired lease at any time prior to plan confirmation, but a creditor could request that the bankruptcy court fix a deadline for assumption or rejection.... During the period between filing the bankruptcy petition and assumption or rejection of the lease, the debtor was not required to pay rent, but the estate was liable for the reasonable value of the use and occupancy of the premises.

*In re Bye-Rite Distributing, Inc.,* 47 B.R. 660, 663–64 (Bankr.D.Utah 1985) (footnote and citations omitted), *rev'd on other grounds,* 55 B.R. 740 (D.Utah 1985). The estate's liability for the use of the premises prior to assumption or rejection of the lease was in the form of an administrative expense claim allowable under 11 U.S.C. § 503(b)(1)(A). The amount of the claim

was not necessarily determined by the liability under the lease, but by the reasonable value of the use of the property. Nevertheless, there was a rebuttable presumption that the contractual rent was a fair and reasonable charge. *E.g., In re William H. Herr, Inc.,* 61 B.R. 252 (Bankr. E.D.Pa.1986); 3 *Collier* ¶ 503.04[1][a][i]-[ii].

The legislative history of the 1984 amendments demonstrates that Congress "perceived the need to realign the burdens incident to assumption and rejection of unexpired leases of nonresidential real property." *In re Bye-Rite Distributing, Inc.,* 47 B.R. at 670. Congress concluded that nonresidential lessors were unduly burdened by the interruption in the flow of their rental income during the period in which the trustee was deciding whether to assume or reject a lease.

> In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

130 Cong.Rec. S8894-95 (daily ed. June 29, 1984) (remarks of Sen. Hatch). Consequently, Congress amended section 365 by adding subsection (d)(3) and (d)(4).

The enactment of section 365(d)(3) and (d)(4) had at least four significant consequences for nonresidential lessors. First, the trustee is limited to a sixty day period, which may be extended by the court for cause, in which to decide whether to assume or reject the lease. 11 U.S.C. § 365(d)(4). Second, the rental falling due during the sixty day period is an allowable administrative expense without the necessity of notice and hearing, as is ordinarily required by section 503(b). *See In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879 (Bankr.E.D.N.Y.1986); *Matter of Longua,* 58 B.R. 503 (Bankr.W.D.Wisc.1986). Third, the amount of the administrative expense claim arising in the sixty day period is governed exclusively by the terms of the lease; "[a]ny necessity for showing the reasonableness of the rent ... has been completely abrogated by section 365(d)(3)." *Matter of Longua,* 58 B.R. at 505; *accord, Matter of Swanton,* 58 B.R. 474 (Bankr.S. D.N.Y.1986); 3 *Collier* ¶ 503.04[1][a][ii], at 503-25 503-26. Fourth, while the court may extend, for cause, the deadline for payment of rental payments falling due within the sixty day period, the deadline may not be extended beyond the sixty day period itself. *See In re The Tandem Group, Inc.,* 60 B.R. 125 (Bankr.C.D.Cal. 1986) (debtor's request for extension of time to assume or reject lease conditioned upon payment of all post-petition rent falling due no later than the sixtieth day after the order for relief and timely payment of rent falling due during the extension period); *In re Galvan,* 57 B.R. 732 (Bankr.S.D. Cal.1986) (dictum). *But see In re Westview 74th Street Drug Corp.,* 59 B.R. 747 (Bankr.S.D.N.Y.1986) (failure to meet a lease obligation as required by section 365(d)(3) within sixty days of order for relief does not effect an automatic termination of lease and forfeiture of right to assume under (d)(4)).

Based on the foregoing, I conclude (and the debtor concedes) that the unpaid post-petition rent in the amount of $4,987.23 should be allowed as administrative expense claim. The real issue in this case however, is whether the claim shold be paid immediately.

■ Collier states that "[t]he timing of payment of [administrative expense] claims appears to be clearly within the discretion of the bankruptcy court." 3 *Collier* ¶ 503.- 02, at 503-5; *accord, In re Chips 'N Twigs, Inc.,* 58 B.R. 109 (Bankr.E.D.Pa.1986). That discretion should be exercised with reference to other provisions and policies of the Code. For example, 11 U.S.C. § 331 provides that the court may allow interim compensation to professionals appointed under sections 327 or 1103 of the Code. The purpose of section 331 is to relieve the economic burden on counsel who otherwise would be compelled, in effect, to finance the debtor's bankruptcy case. *In re Werth,* 32 B.R. 442 (Bankr.D.Colo.1983);

*accord, In re American International Airways, Inc.,* 47 B.R. 716 (Bankr.E.D.Pa. 1985).

The enactment of section 365(d)(3) reflects a policy choice comparable to that of section 331. Congress clearly envisioned that debtor-tenants would "pay their rent, common area, and other charges *on time* pending the trustee's assumption or rejection of the lease." 130 Cong.Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Sen. Hatch) (emphasis added). In light of this strong expression of legislative intent, I conclude that a nonresidential lessor's administrative expense claim arising under section 365(d)(3) should be paid immediately unless the trustee establishes good cause for withholding the payment. *Accord, In re M.H.I., Inc.,* 61 B.R. 69 (Bankr.D.Md. 1986); *In re 1 Potato 2, Inc.,* 58 B.R. 752 (Bankr.D.Minn.1986); *In re Galvan; In re Musikahn Corp.,* 57 B.R. 942 (Bankr.E.D. N.Y.1986); *In re T.F.P. Resources,* 56 B.R. 112 (Bankr.S.D.N.Y.1985); *In re S & F Concession, Inc.,* 55 B.R. 689 (Bankr.E.D. Pa.1985); *Matter of The Barrister of Delaware, Ltd.,* 49 B.R. 446 (Bankr.D.Dela. 1985). In this case, the debtor in possession presented no evidence which would justify the denial of the landlord's request for immediate payment of its claim.[1]

■ Lastly, I must discuss the relationship between the landlord's claim and other administrative expense claims that may be allowed in this bankruptcy case. At trial, the landlord suggested that its claim should be given superpriority status. *See* 11 U.S.C. § 364. Such treatment would be significant in the event the estate's assets are insufficient to pay all administrative expense claims in full. Indeed, this concern was the motivating factor for the landlord's opposition to the debtor's motion to convert since, after conversion, the administrative expense claims arising in the chapter 7 proceedings have priority over the chapter 11 administrative expense claims. *See* 11 U.S.C. § 727(b).

I conclude that the landlord's section 365(d)(3) administrative expense claim is not entitled to superpriority status; rather, it is entitled to payment pro rata with all other allowed chapter 11 administrative expense claims. Therefore, my order directing immediate payment of the landlord's claim will be subject to the trustee's right to seek recovery of all or part of the payment in the event all other administrative expense claimants are not paid in full.

In reaching this conclusion, I am aware that a nonresidential lessor can be likened to an entity which has extended unsecured credit allowable under section 503(b). *Cf.* 11 U.S.C. § 364(a). However, the Code provides no express remedy for a trustee's failure to comply with his obligations under section 365(d)(3). *See* 3 *Collier* ¶ 03.-04[a][ii], at 503–26 to 503–27 n. 22. It would be inappropriate to imply the existence of an automatic superpriority status, particularly since, by its terms, section 364(c) authorizes the allowance of a superpriority only upon notice and hearing before the credit has been extended.[2] As one court has stated, "[h]ad Congress intended to create a super-priority for subsection 365(d)(3) it would have done so by express statutory language." *In re The Tandem Group, Inc.,* 60 B.R. at 742. *Cf. In re Great Northeastern Lumber & Millwork Corp.,* 64 B.R. 426 (Bankr.E.D.Pa.1986) (due to presumption that debtor's limited resources will be distributed equally among creditors, statutory priorities are narrowly construed).

---

1. As a result, I need not determine what circumstances might justify the denial of nonresidential lessor's request for immediate payment of its section 365(d)(3) administrative expense claim. *See generally In re The Tandem Group, Inc.,* 61 B.R. 738 (Bankr.C.D.Cal.1986). Nor do I decide any issues relating to the payment of interim fees under 11 U.S.C. § 331. *See generally* 3 *Collier* ¶ 503.1, at 503–5 to 503–8. However,

I do hold that the fact of conversion is not, by itself, grounds to withhold immediate payment.

2. Of course, to the extent the analogy applies, a nonresidential lessor is like an *involuntary* extender of unsecured credit. Nevertheless, I am not convinced that Congress intended that every nonresidential lessor be a superpriority creditor.

Moreover, I am satisfied that a nonresidential lessor is not without a remedy under the Code to protect its interests. If, after the debtor has filed its petition, the lessor believes its interests are not adequately protected and fears that the trustee will not comply with his obligations under section 365(d)(3), it may file a motion for relief from the automatic stay. *See In re DeSantis,* 66 B.R. 998 (Bankr.E.D.Pa. 1986); *In re Musikahn Corp.* Such a motion may result in the requirement that the trustee post a security deposit; or, the time period for assuming or rejecting the lease may be shortened. Given these statutory protections, it is inappropriate to judicially fashion an additional remedy for lessors. As one court has stated in a related context, "[s]ome protection of the landlord, rather than improvement of position, is the key to an understanding of the aims of section 365." *In re Westview 74th Street Drug Corp.,* 59 B.R. at 754–55.

An order consistent with this opinion will be entered.

### ORDER

AND NOW, this 29 day of May, 1987, upon consideration of the debtor's motion to convert this case from chapter 11 to chapter 7 and the motion of King of Prussia Associates, Inc. to compel the debtor to timely perform obligations pursuant to 11 U.S.C. § 365(d)(3), and after notice and hearing on both motions, it is:

1. ORDERED that the debtor's motion is granted and this chapter 11 case is converted to a case under chapter 7.

2. ORDERED that the landlord's motion is GRANTED.

3. DECLARED that the landlord has an automatic allowed administrative expense claim in the amount of $4,987.23.

4. ORDERED that after his appointment, the chapter 7 trustee shall forthwith pay the aforesaid administrative expense claim subject to the estate's right to recover the payment, or part thereof, if the debtor's assets are insufficient to pay all other administrative expense claims in full

and in order of priority as set forth in 11 U.S.C. § 726(b).