### In re HOMEOWNER'S OUTLET MALL EXCHANGE, INC., Debtor.

#### Bankruptcy No. 87–03037–BKC–AJC.

United States Bankruptcy Court,
S.D. Florida.

June 17, 1988.

Alan Levine, Fort Lauderdale, Fla., for Trustee.

Lawrence Duffy, Boca Raton, Fla., for Owners.

Janet E. Ritenbaugh, Miami, Fla., Vincent Murphy, Naples, Fla., Howard Alabaster, Coral Springs, Fla., Milton F. Friedman, Fort Lauderdale, Fla., for Baumrin.

## MEMORANDUM DECISION AND ORDER AWARDING ADMINISTRATIVE EXPENSES TO OWNER FOR RENT

A. JAY CRISTOL, Bankruptcy Judge.

This matter came before the Court upon the Application for Allowance and Payment of Administrative Expense Claim by C. William Woodford, Aline M. Woodford, Jerry Black and Vicky Black (hereafter referred to as "Owners").

The Court held a hearing on February 29, 1988 continued to March 28, 1988 at which the Court took evidence on the disputed issues raised by the application and the Owners' Memorandum of Law in Support of Application for Allowance of Payment of Administrative Expense Claim.

Owners seek an order directing the Trustee to pay post-petition rent for the 60 day period following the filing of the petition pursuant to 11 U.S.C. § 365(d)(3) and for an additional 33 days of post-petition rent under 11 U.S.C. 503(b)(1)(A). For the reasons set forth below, I am granting the Owners' application and order that:

1. Owners are allowed post-petition rent for the entire 93 day period as an administrative expense claim.

2. The rent for the initial 60 day post-petition period governed by § 365(d)(3) shall be paid immediately subject to the Trustee's right to seek recovery of all or part of the payment in the event all other administrative expense claimants are not paid in full. The amount to be paid immediately is $157,758.79.

3. The rent for the remaining 33 days during which the Trustee occupied the Mall is also allowed in the additional amount of $51,892.50 as an administrative expense claim. However, this sum shall be paid

*pro-rata* with the other administrative expense claims and in order of priority when those claims have been determined and I have authorized payment.

### FINDINGS OF FACT

On August 21, 1987, an involuntary petition under Chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101 et seq., ("Bankruptcy Code" or "Code") was filed against Homeowner's Outlet Mall Exchange, Inc., ("Homeowner's" or "Debtor"). On August 24, 1987, Homeowner's filed a voluntary petition for relief under Chapter 7 of the Code. On October 9, 1987, an Order was entered consolidating both cases under bankruptcy docket no. 87–03037.

On February 22, 1988, C. William Woodford, Aline M. Woodford, Jerry Black and Vicky Black (Collectively "Claimants" or "Owners") filed an Administrative Expense Proof of Claim against the estate of Homeowner's and an Application for Allowance and Payment of Administrative Expense Claim ("Application").

An evidentiary hearing was held on the Application on February 29, 1988. Because the parties were unable to conclude the testimony on that date, the Court continued the hearing to March 28, 1988.

Claimants are owners and lessors of the Harbourtowne Mall which is a shopping mall located in Naples, Collier County, Florida. Pursuant to a Master Lease, dated October 1, 1986, Claimants leased the Mall to Dal–Tex Construction Services, Inc.

The Master Lease was executed in contemplation of the purchase of the Mall by Dal–Tex. Owners and Dal–Tex entered into an agreement dated October 23, 1986 (the "Purchase Agreement") which provided for the sale of the Mall to Dal–Tex. The Purchase Agreement incorporated the Master Lease by reference in its preamble.

In the event of a surrender by Dal–Tex of the Master Lease or a mutual cancellation thereof, Section 29 of the Master Lease provided the Owners with the option to either terminate or receive an assignment of any sublease. On or about October 1, 1986, Dal–Tex entered into a sublease (the "Sublease") with Homeowner's which provided for the lease to the Debtor of all of the property covered by the Master Lease. The Sublease provides that the Sublease is expressly subject to and subordinate to the Master Lease (see Article 4).

In July, 1987, Dal–Tex, recognizing that it could not close pursuant to the Purchase Agreement, surrendered its lease to the Owners. The Owners exercised their right and option under Section 29 of the Master Lease to take assignment of all Subleases, including Dal–Tex's Sublease with the Debtor.

Trustee argued at the hearing that he was a tenant pursuant to the Master Lease. However he presented no evidence on this point. Owners showed convincingly through the leases and Purchase Agreement, the testimony of Alan Woodford and the Affidavit of R.J. Robinson that Owners were landlord to Debtor under the terms of the Dal–Tex Sublease. Were the Debtor to be a Tenant under the terms of the Master Lease it would be required to pay double rent in accordance with the holdover provision of Section 31 of the Master Lease.

On or about September 30, 1987, the Trustee filed a Motion for Extension of Time to Accept or Reject Executory Contracts ("Motion"), seeking an extension of the 60 day period for assumption or rejection of non-residential leases provided by § 365(d)(4) of the Code. An Objection to the Motion was filed by the Owners on or about October 19, 1987. The Motion for Extension was not heard and was apparently abandoned by the Trustee. On November 19 and 21, 1987, the Trustee conducted an auction on the premises of the Harbourtowne Mall. From that auction the Trustee recovered approximately $283,000 for the estate.

From August 24, 1987 when Debtor filed its voluntary petition to November 24, 1987 the Debtor continued in possession of the Mall. The Mall covers 123,700 square feet. The Trustee assumed control of 85,268 square feet of the Mall by the use of chains, master locks and armed security guards. During this time no rental or oth-

er payments were made by the Trustee to the Owners or to Dal–Tex. However, the Trustee in conversation with the Owners' representative assured the Owners that the rent would be paid as soon as funds became available. The Sublease between Dal–Tex and Debtor provided for fixed rent in the amount of $770,000 per annum to be paid in 12 equal monthly installments. Rent for the entire Mall under the Lease would be $64,177.67 per month. Calculated by area rent would be $6.60 per square foot per annum.

Article 6 of the Sublease also required Debtor to pay as additional rental all taxes. As of March 31, 1988 ad valorem real estate taxes on the Mall were $48,811.70 for 1987. As of April 1, they will be $50,301. After April 10 the 1987 taxes become delinquent. Pursuant to Article 6, Debtor is also liable for sales taxes in the amount of 5%. (I ruled from the bench that Debtor was not liable for sales tax as a matter of law. However, this is not applicable to a situation in which sales tax is to be paid as rent by the terms of the lease. As will be seen, in that case Debtor is obligated to pay the sales tax under 11 U.S.C. 365(d)(3). Accordingly, sales tax is due for the first 60 days the Debtor was in possession, but not the last 33 days in keeping with the general law.)

Pursuant to Article 9 of the Sublease, Debtor is obligated to pay utilities. Payments for electricity in the amount of $6,009.29 which Debtor was obligated to pay were advanced by Owners. Under Article 12, Debtor must also pay insurance premiums for flood insurance on the Mall totalling $790.00 for the year or $65.83 per month. Finally, the rent rider requires Debtor to pay interest at 12% per annum on delinquent payments.

## CONCLUSIONS OF LAW

Prior to the amendments to the Bankruptcy Code in 1984, numerous courts, in interpreting former Section 365 and Section 503(b)(1)(A) of the Code, held that until the debtor's assumption or rejection of a lease, the debtor was not required to pay rent, but the estate was liable for the reasonable value of the use and occupancy of the premises. See *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 891, 896–897 (Bankr.E.D.Pa.1987) and cases cited therein; see also, *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 971–72 (Bankr.E.D.Pa.1987).

Some courts held that there was a rebuttable presumption that the contractual rent was a fair and reasonable charge. See e.g., *In re William H. Herr, Inc.,* 61 B.R. 252 (Bankr.E.D.Pa.1986).

On July 10, 1984, Congress added Subsections (d)(3) and (d)(4) to Section 365 of the Bankruptcy Code with the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 ("1984 Amendments").

Section 365(d)(3) of the Code provides: *The trustee shall timely perform all the obligations of the debtor,* except those specified in § 365(b)(2), arising from and after the order for relief *under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.* The court may extend for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligation under the provisions of subsection (B) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3) (1984) (emphasis added).

Section 365(d)(4) provides:
Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, *if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief,* or within such additional time as the court, for cause, within such 60 day period, fixes, *then*

*such lease is deemed rejected,* and the trustee shall immediately surrender such nonresidential real property to the lessor. 11 U.S.C. § 365(d)(4) (1984) (emphasis added).

The addition of these subsections to section 365 significantly changed the treatment of unexpired non-residential leases of real property. *In re M.H.I., Inc.,* 61 B.R. 69, 70 (Bankr.D.Md.1986); *Dieckhaus, supra,* 73 B.R. at 971–72. Under prior law, "the estate's liability for the use of the premises until assumption or rejection of the lease was in the form of an administrative expense claim allowable under 11 U.S. C. § 503(b)(1)(A). The amount of the claim was not necessarily determined by the liability under the lease, but by the reasonable value of the use of the property ... Congress concluded that nonresidential lessors were unduly burdened by the interruption in the flow of their rental income during the period in which the trustee was deciding whether to assume or reject a lease ... Consequently, Congress amended section 365 by adding subsection (d)(3) and (d)(4)." *Dieckhaus,* 73 B.R. at 972.

According to the legislative history, the purpose of the 1984 Amendments to section 365 was:

"to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code ... [the] problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making·payments due under the lease. These payments include rent due the landlord and common charges which are paid by all the tenants according to the amount of space they lease. *In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position....*

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. *This timely performance requirement will insure the debtor tenants pay their rent, common area and other charges on time pending the trustee's assumption or rejection of the lease.*

130 Cong.Rec. § 8894–95 (daily ed. June 29, 1984) (remarks of Sen. Hatch) (emphasis added).

The enactment of section 365(d)(3) and (d)(4) had at least four significant consequences for nonresidential lessors. *Dieckhaus,* 73 B.R. at 972. First, the trustee is limited to a 60 day period in which to decide to assume or reject the lease, which may be extended for cause. 11 U.S.C. § 365(d)(4). *Id.* Second, the rental falling due· during the first 60 day period is an allowable *administrative expense without the necessity of notice and hearing,* as is ordinarily required by § 503(b). *Id. Accord In re O.P. Held, Inc.,* 77 B.R. 388, 391 (Bankr.N.D.N.Y.1987); *In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879 (Bankr. E.D.N.Y.1986); *In re M.H.I., Inc.,* 61 B.R. 69, 71 (Bankr.D.Md.1986); *In re Longua,* 58 B.R. 503 (Bankr.W.D.Wisc.1986); *In re Galvan,* 57 B.R. 732, 733 (Bankr.S.D.Cal. 1986); *In re Barrister of Delaware, Ltd.,* 49 B.R. 446 (Bankr.D.Del.1985); *(Feld v. S & F Concession, Inc.) In re S & F Concession, Inc.,* 55 B.R. 689, 691 (Bankr.E.D. Pa.1985).

The third consequence of the enactment of section (d)(3) and (d)(4) is that the amount of the administrative expense claim arising in the 60 day period *is governed exclusively by the terms of the lease. Dieckhaus,* 73 B.R. at 972. Any necessity for showing the reasonableness of the rent has been completely abrogated by section 365(d)(3). *Id.;* see also, *Longua, supra,* 58 B.R. at 505: *In re Swanton,* 58 B.R. 474 (Bankr.S.D.N.Y.1986): *In re Musikahn Corp.,* 57 B.R. 942, 945 (Bankr.E.D.N.Y. 1986) (debtor's rent obligations arise from lease as a consequence of debtor's continued possession and use of premises).

Finally, while the court may extend the deadline for assumption or rejection of the lease for cause, the deadline for payment of the rental payments falling due

within the 60 day period, may not be extended beyond the 60 day period. *Dieckhaus* at 972; *In re The Tandem Group, Inc.,* 60 B.R. 125 (Bankr.C.D.Cal.1986): *Galvan, supra,* 57 B.R. at 733.

In light of the recent amendments to section 365 and the case law interpreting it, the Trustee's position with respect to the estate's liability to the Owners of the Mall for the first 60 days of the Debtor's occupancy of the Mall has no basis under current law. Congress has clearly accorded to the Owners, as lessors of non-residential property, (1) the status of an administrative expense claimant and (2) the right to immediate payment of rent and all other obligations under the Sublease for the first 60 days of the Debtor's occupancy of the Mall *Dieckhaus; M.H.I.; O.P. Held; Longua; Coastal Dry Dock; S & F; Barrister.*

The law is also clear that at least for the first 60 days the Sublease governs as to the amount of rent due and not the use which the Trustee/Debtor's estate gave to the premises, *Musikahn, Dieckhaus; Longua; Swanton.*

In light of the clear legislative intent that during the first 60 days of the post-petition period Debtors pay their rent on time and that those payments are allowable without the need for notice or hearing, I am directing immediate payment of the landlord's claims. Given the fact that the Trustee has failed to make any payments to the Owners for over 7 months and that the Debtor held a lease for the entire Mall the Owners have suffered an unusually severe hardship which must be alleviated immediately.

■ Of course, this Order will be subject to the Trustee's right to seek recovery of all or part of the payment in the event other administrative expense claimants are not paid in full.

Such a ruling is not only consistent with the ruling of other courts which have addressed this issue but with the equities of the case at hand. *Dieckhaus, supra,* at 983; *In the Matter of the Barrister of Delaware, Ltd.,* 49 B.R. 446, 447 (Bankr.D. Del.1985); *S & F Concession, supra,* at 690–91.

■ The foregoing discussion applies only to the first 60 days of the post-petition period. The Trustee in this case did not vacate the premises at the end of the 60 day period as required by the Code. Therefore, the Court must determine what obligation the Trustee owes for the last 33 days during which he occupied the premises.

It was clearly the intent of Congress that lessors would either obtain immediate possession of their property in the event of rejection of the Lease pursuant to Section 365(d)(4) or receive full payment for all rental arrearages in the event of assumption of the Lease. In light of the additional hardships imposed on the Owners by the Debtor's possession of the Mall for an additional 33 days beyond the date of rejection of the Lease, the Owners should be compensated at the fair market value for rental of the Mall from October 23, 1987 to November 24, 1987.

This is consistent with the manner in which post-petition rent has been treated under 11 U.S.C. 503(b)(1)(A) prior to the 1984 amendments to § 365. In this case the contractual rent under the Dal–Tex Sublease ($6.66 per square foot) was a fair and reasonable charge. *In re William H. Herr, Inc.,* 61 B.R. 252 (Bankr.E.D.Pa. 1986). However, since the Trustee did not occupy the entire premises, rent for the last 33 days will be allowable *pro-rata* only for the 85,000 square feet actually occupied by the Trustee. (See 3 Collier on Bankruptcy, § 503.04(1)(a)(ii), 503–24 n. 14 (15th Ed.1986)). As this is an administrative expense it shall be paid at such time as the other administrative expense are paid and in priority.

### ORDER

Accordingly, it is ordered that for the 60 day period from August 25, 1987 until October 22, 1987, the Trustee shall immediately pay to Owners the Debtors obligations under the Dal–Tex Sublease in the amount of $157,758.79 as an administrative expense. The sum is calculated as follows:

Rent:
64,166.67 per month × months =    $128,333.34

Taxes:
5% sales tax =    6,417.00

Ad valorem tax
$50,301.00 ÷ 12 × 2 =   $ 8,383.50

Utilities
Electric $3,637.63 + 2,371.67 =   6,009.29

Insurance
Flood Ins.
(667.00 + 123.00) ÷ 12 × 2 =   131.66

Interest:
12% per annum from 9/1/87 to
  4/4/87 on $64,166.67 =   4,557.00
12% per annum from 10/1/87 to
  4/4/87 on $64,166.67 =   3,927.00
                    Total $157,758.79

In the event sufficient funds are not available to pay all administrative claims this payment is subject to the Trustee's right to seek recovery of all or part of the payment.

For that period from October 23, 1987 until November 24, 1987 the Owners are awarded as an administrative expense the fair market rental value for the 85,000 square feet actually used by the Trustee. Based upon $6.66 per square foot per annum the rent for 85,000 square feet for 33 days is $51,892.50.

This sum shall be paid *pro-rata* with the other administrative expenses and in priority. No administrative expenses shall be paid except by notice to all concerned parties and hearing.