## In re VIRGINIA PACKAGING SUPPLY COMPANY, INC., Debtor.

### Bankruptcy No. 89–02569–AT.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 28, 1990.

Nelson C. Cohen, Barbara L. Ward, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for debtor.

---

Jeffrey M. Sherman, Mark H. Berman, Shaw, Pittman, Potts & Trowbridge, McLean, Va., for Continental–Packaging Associates, Ltd. Partnership.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Virginia Packaging Supply Company, Inc. (VPS), is a debtor in possession in a Chapter 11 case commenced by an involuntary Chapter 7 petition filed on December 31, 1989. The order for relief under Chapter 7 was entered on January 18, 1990, and order of conversion to Chapter 11 entered on March 16, 1990.

The court held a hearing on April 13, 1990, on the debtor's motion to approve rejection of unexpired lease and a cross motion for payment of post-petition rent filed by the lessor, Continental–Packaging Associates, Limited Partnership (Continental). For the reasons stated from the bench, the court granted the debtor's motion to approve rejection of unexpired lease. Continental's cross motion for payment of post-petition rent is the subject of this opinion.

The facts of this case provide the court an opportunity to address a difficult area of bankruptcy law: post-petition obligations of a trustee or debtor in possession for payments under a lease of non-residential real property.

The court makes the following rulings:

1. The debtor's rejection of a non-residential lease with Continental was effective for purposes of the lessee's obligations under 11 U.S.C. § 365(d)(3) upon this court's bench ruling on April 13, 1990, which approved rejection of the lease.

2. The amount of Continental's post-petition administrative rent claim will be determined by the terms of the lease for the rent incurred between the filing of the case and VPS's rejection. The debtor's lease obligations incurred after rejection are subject to the limitations of 11 U.S.C. § 503(b)(1) which provides that administrative claims are to be allowed for "the actual, necessary costs and expenses of preserving the estate". 11 U.S.C. § 503(b)(1).

3. The debtor's duty under § 365(d)(3) to timely perform lease obligations does not give Continental a "super priority" over other administrative claims against the estate; nor does this section require immediate payment by VPS of Continental's claim absent a showing that there will be sufficient funds to pay all administrative claims in the case.

### Facts

The debtor VPS engaged in business as a distributor of paper goods supplies. On December 24, 1986, VPS entered into a lease agreement with Continental. Originally, the lease was for a ten-year term which provided for VPS to use 60,000 square feet of a 93,000 square foot building. However, by "Second Addendum To Lease" dated August 2, 1988, VPS took over the entire building.

In August 1989, Wesley O. McGee, president of VPS, informed Thomas D. Cafferty, managing general partner of Continental, that VPS was experiencing financial difficulties. According to his testimony at the hearing, Mr. McGee indicated that at that time he approached Continental and offered "to consolidate down" part of VPS's operations to about 55,000 square feet, making space available for Continental to lease to others. McGee's testimony indicates that Continental placed a sign in front of the building advertising substantial space for rent.

Mr. Cafferty testified at the hearing that VPS offered to reduce its space in the building and that he made attempts to market the VPS space. However, he never requested VPS to reduce its space or agreed to a reduction of the space under lease.

Although prior to the bankruptcy Continental accepted rental payments from VPS in amounts less than required by the lease, there was no agreement between the parties to reduce space or pro-rate rent for less than a full month. The last rent payment by VPS was made in January 1989.

On December 13, 1989, an involuntary Chapter 7 petition was filed against VPS, and an order for relief was entered by this court on January 18, 1990. On March 16, 1990, the case was converted to a case under Chapter 11 on motion by VPS under § 706 of the Bankruptcy Code. Prior to the conversion date, however, VPS had filed a motion to approve rejection of the Continental lease. In response to VPS's motion, Continental filed a cross motion for payment of post-petition rent, which is the issue addressed in this opinion.

Since April 1, 1989, to the time of the hearing, VPS had occupied and used approximately 20 percent of the building space.

### Discussion And Conclusions

By its motion, Continental effectively seeks "super priority" status of its pre-rejection rent in the amount required under the VPS lease with payment to be made immediately.

Section 365(d)(3) and (4) sets limits on the trustee or debtor in possession with respect to non-residential leases. Section 365(d)(4) requires the lease to be assumed or rejected within 60 days or it will be automatically "deemed rejected". Section 365(d)(3) in part provides that:

> "[t]he trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.... Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3).

It is under § 365(d)(3) that Continental asks the court to order immediate payment of VPS's lease obligations.

VPS takes the position that it met its obligations under § 365(d)(3) by filing for approval of rejection of the lease on February 20, 1990 (prior to conversion of the case). In support of this position, VPS contends that its filing of the motion for approval of rejection was sufficient to satisfy the limiting language, "until such lease is assumed or rejected," thus making the subsection's requirement of timely performance inapplicable. In taking this position, VPS appears to interpret § 365(d)(3) as requiring *either* timely performance of lease obligations *or* timely rejection of the lease. VPS makes broad reference to the legislative history of the section and urges that its purpose was to ensure prompt assumption or rejection of non-residential leases.

The court rejects VPS's argument that its communications with Continental as well as its motion to approve rejection should satisfy any obligations imposed on it under § 365(d)(3). Section 365(d)(3) is not merely a device by which Congress intended to ensure prompt assumption or rejection of leases. This function is adequately performed by § 365(d)(4). Rather, § 365(d)(3) gives rise to obligations that accrue until the date of assumption or rejection of the lease. The court appreciates that this leaves the debtor in a precarious position of incurring liability until rejection, but it is not within the court's power to alter the rights and liabilities expressly provided by the Bankruptcy Code.

■ This court agrees with Continental's position that court approval was necessary for an effective rejection of the lease. The case law since the 1984 Bankruptcy Code amendments overwhelmingly supports the need for court approval effectively to accept or reject a lease (unless, of course, the 60 day period has expired). *See, e.g., In re REVCO D.S., Inc.*, 109 B.R. 264 (Bankr.N.D.Ohio 1989). *In re D'Lites of America, Inc.*, 86 B.R. 299 (Bankr.N.D.Ga.1988); *In re OK Kwi Lynn Candles, Inc.*, 75 B.R. 97 (Bankr.N.D.Ohio 1987); *In re Swiss Hot Dog Co.*, 72 B.R. 569 (D.Colo.1987). *But see In re 1 Potato 2, Inc.*, 58 B.R. 752 (Bankr.D.Minn.1986).

Given the finding that VPS does have an obligation to pay administrative rent arising under section 365(d)(3), this court must now determine how to value the claim and its priority. The testimony at the April 13, 1990, hearing indicated that after the filing of the petition VPS occupied varying amounts of space in the leased premises— from 80 percent at one time to a present low of 20 percent. VPS maintains that as an administrative expense under § 503(b)(1)(A) the claim should be allowed only to the extent it represents "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Therefore, VPS should be liable for rent only on the actual percentage of floor space used after the filing of the bankruptcy petition, or 20 percent.

Continental argues on the other hand that VPS's occupation of the premises was sufficient to frustrate Continental's ability to relet the premises. VPS should be liable for the entire amount of rent required under the lease because it held constructive possession of the entire premises. Furthermore, Continental argues that there should be a rebuttable presumption that the rental under the lease is a fair and reasonable charge for the premises.

■ This court agrees with the result urged by Continental but for a different reason. The terms of the lease should control the obligation up to the time of rejection of the lease. This is not because of any presumption of fairness; rather, it is because of the operation of § 365(d)(3) which mandates the debtor-in-possession's immediate duty to perform all obligations due under the lease "notwithstanding section 503(b)(1)". The court interprets the quoted language as requiring timely payment of rent provided under the lease without regard to the "actual, necessary costs" requirement or the necessity for notice and hearing under § 503(b)(1). *See In re Cardinal Industries, Inc.*, 109 B.R. 738 (Bankr.S.D.Ohio 1989); *In re Western*

*Monetary Consultants*, 100 B.R. 545 (Bankr.D.Colo.1989); *In re Homeowner's Outlet Mall Exchange, Inc.*, 89 B.R. 965 (Bankr.S.D.Fla.1988). In other words, prior to rejection of the lease the obligations of the lessee to be honored must be those explicitly required by the terms of the lease. *See In re Revco D.S., Inc.*, 109 B.R. 264, 270–271 (Bankr.N.D.Ohio 1989); *In re Cardinal Industries, Inc.*, 109 B.R. at 741; *In re Monetary Consultants*, 100 B.R. at 547. *But see In re Xonics, Inc.*, 65 B.R. 69, 73 (Bankr.N.D.Ill.1986).

Based upon my analysis of § 365(d)(3), the court finds that the terms of the lease shall apply to determine VPS's lease obligations arising between the commencement of the case and the bench order approving rejection of the lease.[1] Since there was no meeting of the minds on an agreement between the debtor and Continental to reduce the space from that provided by the lease, the rental obligation must be based upon VPS's formal lease of the entire building. Any obligations occurring after the date the rejection was approved shall be governed by § 503(b).

Now the question becomes what type of priority should be given to VPS's obligation for rent accrued in the period before rejection? Continental argues that § 365(d)(3) entitles it to immediate payment.

While section 365(d)(3) does require a debtor-in-possession to make immediate payment of nonresidential lease obligations, the section fails to provide a remedy for failure to pay. It is by no means clear that the bankruptcy court is bound to compel immediate payment of such obligations, especially in cases where there may not be sufficient funds to pay all administrative claims in full, and I am reluctant to infer this power.

■ The problem with ordering immediate payment is that it may result in "superpriority" status where none was intended.

---

1. The date of commencement of this case is December 31, 1989, the date the involuntary petition was filed against VPS. The case was converted to a case under Chapter 11 under § 706, which had the effect of reinitiating the 60 day period under § 365(d)(3) and (4). 11 U.S.C. § 348(c). The conversion had no effect, however, on the date of the commencement of this case. 11 U.S.C. § 348(a).

In many bankruptcy cases, *when* a claim is paid makes the difference as to whether it will be paid at all. At least one court has approved a "super-priority" status for section 365(d)(3) obligations. *See In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415, 416 (D.Mass.1987). However, the greater weight of authority rejects this proposition. *See In re Buyer's Club Markets, Inc.*, 115 B.R. 700 (Bankr.D.Colo. 1990); *In re Cardinal Industries, Inc.*, 109 B.R. at 742; *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 (Bankr.E.D.Pa.1987). This court holds that administrative expenses arising from § 365(d)(3) obligations retain the same priority as assigned to all administrative expenses by § 507(a).

Still, there is the question of what the remedy should be for the debtor-in-possession's failure to pay. Some courts have ordered payment subject to recapture if there are not sufficient funds to pay all administrative claims. *In re Buyer's Club Markets, Inc.*, 115 B.R. 700; *Dieckhaus Stationers*, 73 B.R. at 973. At least one court would require payment "absent a showing by the trustee of 'substantial doubt' that there will ultimately be sufficient funds available to pay all administrative expenses." *In re Granada, Inc.*, 88 B.R. 369, 375 (Bankr.D.Utah 1988).

Other possible remedies might be to deny the debtor-in-possession the ability to assume the lease until payment is made, *In re The Tandem Group, Inc.*, 60 B.R. 125 (Bankr.C.D.Cal.), *modified*, 61 B.R. 738 (Bankr.C.D.Cal.1986), or to give the lessor relief from the automatic stay as suggested by language in *Dieckhaus Stationers*, 73 B.R. at 974.

This court rejects Continental's request for immediate payment until the extent of VPS's administrative claims can be determined. Since the remedy of relief from the automatic stay was not sought in the instant case, it will not be considered.

*Summary*

■ Continental is entitled to an administrative claim for payments due under its lease with VPS. The terms of the lease will control the amount of the claim that arose after commencement of this case until the Court's bench ruling on April 13, 1990, which approved VPS's rejection of the lease. However, Continental is not entitled to payment without regard to other administrative claims. In order to seek payment, there must be a showing either that all § 503(b) claims will be paid in full, or that Continental's claim will be paid out on an equal basis as all other § 503(b) claims.

An appropriate order will be entered by the court.

## ORDER

For the reasons stated in the Memorandum Opinion entered simultaneously with this order,

IT IS ORDERED that the cross motion of Continental–Packaging Associates, Limited Partnership for payment of post-petition rent is partially granted to allow its rent as an administrative claim in an amount to be determined pursuant to the court's opinion. To the extent the cross motion requests immediate payment of Continental's administrative claim it is DENIED.