**In re FISHER & FISHER, INC., Debtor.**

**Bankruptcy No. 1-84-00861.**

United States Bankruptcy Court, S.D. Ohio, W.D.

April 12, 1985.

David H. McCown, Ironton, Ohio, for debtor.

Carol Jean Destocki, Ironton, Ohio, trustee.

### DECISION AND ORDER RE LANDLORD'S CLAIM

BURTON PERLMAN, Bankruptcy Judge.

The debtor in this case is a corporation which operated a retail hardware store in Southpoint, Ohio. The business not having prospered, a chapter 7 bankruptcy case was filed April 10, 1984. A trustee was thereupon appointed, of course having the obligation to liquidate the assets of the estate. The trustee remained in possession until January 8, 1985. The landlord now has filed an application for rent and for utilities furnished. There is a companion application by the trustee for the allowance of administrative expenses on the landlord's account.

These matters came on for hearing before the court on April 2, 1985 at which time testimony was taken. The primary witnesses were Raymond Bailey, owner and landlord of the property, and Carol Jean Destocki, trustee. Bailey testified that he bought the property in September 1983. There was a written Rental Agreement between Bailey and the tenant providing for a rent of $3,360.00 per month. The Rental Agreement included a provision that the landlord would "complete Building as designated." Debtor was able to pay the rent from the beginning of the relationship, and Bailey advised debtor that if it was having problems it could pay the rent later. As it turned out, Debtor never paid any rent. There were other tenants in the building, and debtor occupied some 10,000 square feet of a total of 11,000 square feet. Bailey was of the opinion that the fair rental value of the property as retail space was the rate stated in the Rental Agreement. He further offered the opinion that a reasonable price of the space for warehouse use would be $2.76 per square foot. For the space in question this comes out to be $2300.00 per month. Bailey testified that others were interested in renting the space during the period of the bankruptcy. He further testified that he did ask the trustee to vacate the premises before they were vacated. Bailey had some interaction with the trustee in regard to the possibility of him purchasing the inventory. He offered $32,000.00 for the inventory, but it was his statement that this was conditioned on off setting that amount against accrued unpaid rent.

The trustee also testified. With respect to the offer by Bailey to purchase the inventory, she stated that she was unaware that the offer was conditioned on any offset. She stated that Bailey came to her in the early summer of 1984, offered to pay $32,000.00 for the inventory and said that as part of the deal he would forego any rent payment. Bailey then went to Florida, and the trustee, finding the offer acceptable, did nothing further about disposing of the inventory. Bailey did not return from Florida until October, and it was only then that the difference emerged of Bailey's view of his proposal and what the trustee understood it to be. The trustee thereupon renewed efforts to find a purchaser for the inventory. The trustee also testified that Bailey had never asked her to vacate the premises, and he never told her that he had a tenant desirous of renting the premises.

Bailey, in addition to damages by way of administrative rent, also seeks reimbursement for alleged utility payments on account of the occupancy by the trustee. He stated that the utility cost was for heat. He testified that there was a single unit for the entire building, and it was a gas furnace. He said that the amount due for the

whole building would exceed the $600.00 per month figure. He testified that the $600.00 per month figure was an average. He testified that the monthly bill for the worst month of occupancy by the trustee was in excess of $900.00. No utility bills were placed in evidence by Bailey. The foregoing depicts the testimony by Bailey and the trustee.

Based on the testimony and our observation of the witnesses, we have reached the conclusion that the $600.00 per month average utility cost sought by the landlord is excessive. Taking into account, first, that for more than half of the period of occupancy by the trustee, which extended over the spring and summer months of 1984, any need for heat would be negligible or nonexistent, and, second, that for the worst month heating cost was in the vicinity of $900.00, the $600.00 per month figure is not adequately supported. Particularly is this so in the absence of any bills or record of payment on account of utilities. Because of the absence of any reliable evidence regarding utilities, we would be justified in declining to make any award whatsoever to the landlord on this account, but since there must have been some need for heat during the winter months, we hold that the amount of $1500.00 on account of utilities is warranted.

Bailey's testimony in regard to the utilities was not only unsatisfactory to support his claim in that regard, but also casts doubt on his credibility in respect to other matters. Particularly do we find his credibility significant in regard to the respective statements of the trustee and the landlord as to whether the trustee had ever been requested to vacate the premises prior to the time that they were relinquished. The fact that Bailey contributed to the duration of occupancy to the trustee by making an offer and departing for Florida for a substantial period of time, also is a consideration against his demand for administrative rent.

The question presented to us by the present application arises under 11 U.S.C. § 503, entitled Allowance of Administrative Expenses. The statute there provides in pertinent part:

> (b) after notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under § 502(f) of this title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

*    *    *    *    *    *

Focusing upon the words "after the commencement of the case", we lay to rest immediately that portion of landlord's application which pertains to pre-bankruptcy rent, utilities, and property taxes. A claim on account of such pre-bankruptcy items can only be the subject of a proof of claim as a general creditor. See, *In re Hearth and Hinge, Inc.*, 28 B.R. 595, 10 B.C.D. 615 (Bankr.S.D.Ohio W.D.1983). The application will therefore be denied so far as it seeks compensation for pre-bankruptcy expenses as an administrative expense. With respect to the claim for utilities, we hold that landlord is entitled to a recovery of utilities as an administrative expense since it is clear that such an expense was an actual and necessary cost of preserving the estate. We have above evaluated at $1500.00 the amount in which this item is justified.

This brings us, then, to the remaining item in contention, landlord's claim for post-filing rent. In regard to this item, the trustee never took the affirmative action of rejecting the Rental Agreement with the landlord. The Agreement was rejected by operation of law, see 11 U.S.C. § 365, sixty (60) days after the date of the Order for Relief which was April 10, 1984. Automatic rejection of the Rental Agreement occurred then on June 10, 1984. Prior to such rejection rent under the Rental Agreement for the months of May and June accrued. We are precluded from questioning the reasonableness of the monthly rental under the Rental Agreement for those two months because of an amendment to

the bankruptcy statute effected by the Bankruptcy Amendments and Federal Judgeship Act of 1984 at 11 U.S.C. § 365(d)(3). *See,* 3 Collier on Bankruptcy (15th ed.) 503–17. Landlord is therefore entitled to rent pursuant to his Rental Agreement for the months of May and June, together totalling $6,720.00.

 We will not, however, allow any rental to the landlord for the period from June through October, 1984, because it was his absence leaving unresolved an arrangement between himself and the trustee which caused the trustee to continue occupancy through this period. The Rental Agreement no longer being in effect for the remainder of the trustee's occupancy, we are not bound by its terms in arriving at a figure of reasonable compensation for the months of November, December and January. As to that period compensation must be fixed by evaluating the "actual, necessary costs and expenses of preserving the estate." After carefully reviewing the evidence presented at the hearing, giving due regard to the credibility of the witnesses, we have reached the conclusion that a fair value for occupancy of the premises after rejection of the Rental Agreement was $1,000.00 per month. There no longer being a Rental Agreement in effect, we will prorate this figure for the month of January 1985. We therefore allow an additional total figure for the months of November and December, 1984, and January 1985, of $2,258.00.

Based upon the foregoing discussion the total amount allowed to landlord on his application for administrative expense is $10,478.00.

SO ORDERED.