**In the Matter of Ronald H. LONGUA d/b/a The Plum Tree f/d/b/a Modular Way Filigree, Debtor.**

**Bankruptcy No. MM7–84–02218.**

United States Bankruptcy Court, W.D. Wisconsin.

March 12, 1986.

Roy L. Prange, Jr., Ross & Stevens, S.C., Madison, Wis., for The Levy Bros.

Michael E. Kepler, Madison, Wis., Trustee.

William A. Chatterton, Ross & Chatterton, Madison, Wis., for debtor.

MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

This matter came on for a hearing on a request for payment of an administration expense on December 9, 1985, and was taken under advisement with the parties to submit briefs. Although there are some factual issues in dispute none affects the outcome. The sole question of law present-

ed is whether the trustee is required to pay full reserved rent under section 365(d) of the Code, for the period when the trustee remained in possession of the premises.

The debtor, Ronald Longua, filed a chapter 7 petition on November 16, 1984, and Michael Kepler was appointed trustee. At the time of filing, Longua's terminated business occupied retail space leased from the petitioners herein, Phillip A. Levy, Marvin J. Levy, and Jeffrey C. Levy ("Levy Brothers") for a term of twenty-eight months from September 1, 1983, to December 31, 1985, at a rent of $4,062.50 per month. The trustee did not assume the lease within sixty days of the date of the petition, but did use the premises to store the debtor's merchandise until it was auctioned on January 19 and 20, 1985. The trustee surrendered possession of the premises to Levy Brothers on January 21, 1985. Levy Brothers claims the full monthly rental for the months of November and December, 1984, and a prorated portion of the monthly rental for the month of January, 1985, as a priority administrative expense.

The parties agree that under the lease a total of $9,750.00 is due for the period the trustee remained in possession. The trustee argues, however, that because the premises were used only for warehouse purposes and did not suffer the normal wear and tear of a retail establishment the estate should only be charged the "warehouse" value of the premises. Testimony at trial established that warehouse space rents for approximately one-third to one-half the amount charged for retail property. The trustee suggests that the court should allow only one-third of the amount claimed by Levy Brothers. Although the trustee states that he used the premises only as a warehouse, he does not deny that he occupied the entire floor space covered by the lease.

Prior to the 1984 amendments to the Code, two lines of cases had developed with respect to the amount of rent that may be charged in such circumstances. One line of cases subscribed to the view that adminis-

trative rent claims were limited to the reasonable rental value of the portion of the demised premises actually used and occupied. *See In re United Cigar Stores Co. of America,* 69 F.2d 513, 516 (2d Cir.1934); *In re Ram Manufacturing, Inc.,* 38 B.R. 252 (Bankr.E.D.Pa.1984). The second line of cases, which reflects the rule of law followed by the Seventh Circuit, held that administrative rent claims must be based upon the reasonable rental value of the claimant's property without regard to the amount of space actually used. *See In re Schnabel,* 612 F.2d 315 (7th Cir.1980); *In re Millard's Inc.,* 41 F.2d 498 (7th Cir. 1930); *In re International Storage Corp.,* 41 B.R. 808 (Bankr.E.D.Wis.1984). There appears to be little question that the second line of cases constituted the majority rule. *See Id.* at 809, n. 5.

Although most claims for the allowance of administrative expenses must be proved under the standards contained in 11 U.S.C. § 503, a newly amended section of the Code controls the allowance of administrative rent claims in circumstances such as the one at hand. Section 365(d), as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, provides in relevant part:

(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property ... of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

. . . .

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order

for relief, but the time for performance shall not be extended beyond such 60-day period.... Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(1), (3), (4). The 1984 amendments added paragraphs (3) and (4), which clearly place stringent restrictions upon the trustee. Paragraph (3) requires the trustee to timely perform all of the debtor's obligations (with exceptions not relevant here), including the timely payment of all rents reserved under the lease until the lease is assumed or rejected. This obligation is thus made expressly independent of the normal standards for administrative expense claims under section 503(b)(1). Paragraph (4) requires the trustee to immediately vacate leased property if the lease is not assumed within the statutory period. The new paragraphs impose a strict and inflexible requirement of timely performance upon the trustee. *See In re S & F Concession, Inc.,* 55 B.R. 689, 13 B.C.D. 1119 (Bankr.E.D.Pa.1985); *In re Southwest Aircraft Services, Inc.,* 53 B.R. 805, 13 B.C.D. 814 (Bankr.C.D.Cal.1985); *In re The Barrister of Delaware, Ltd.,* 49 B.R. 446, 13 B.C.D. 29 (Bankr.D.Del.1985). The trustee's obligation to pay full rent due during the sixty-day period for assumption or rejection constitutes an administrative expense which is payable without notice or hearing. Any necessity for showing the reasonableness of the rent or any of the other factors considered under section 503(b) has been completely abrogated by section 365(d)(3). Levy Brothers was entitled to the immediate receipt of full rental payments until the lease was assumed or rejected. *S & F Concession, supra.* [1]

1. Relevant legislative history further illuminates the Congressional purpose in amending section 365(d):

> Subtitle C of title III, with the exception of a few minor changes, is identical to S. 549 which was overwhelmingly approved by the committee and which unanimously passed the Senate in 1982 and 1983.
>
> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code.
>
> ....
>
> [The second] problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

> The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease. For cause the court can extend the time for performance of obligations due during the first 60 days after the order for relief, but not beyond the end of such 60-day period. At the end of this period, the amounts due during the first 60 days would be required to be paid, and thereafter, all obligations must be performed on time. This permissible 60-day grace period is intended to give the trustee time to determine what lease obligations the debtor has and to locate the cash to make the required payments in exceptionally large or complicated cases.

130 Cong.Rec. S8994–95 (daily ed. June 29, 1984) (remarks of Senator Hatch) as quoted in *In Re By-Rite Dist., Inc.,* 47 B.R. 660, 664–65 [12 B.C.D. 1082] (Bankr.D.Utah 1985). *Reprinted in S & F Concession, supra* 55 B.R. 689, 13 B.C.D. at 1120.

What is less clear is the amount of rent that Levy Brothers is entitled to receive for the period during which the trustee held over after the lease was rejected by the trustee's failure to assume the lease within the sixty-day period. *See* 11 U.S.C. § 365(d)(4). Under subsection (d)(3) the trustee is only required to perform the debtor's obligations under the lease until the lease is rejected. It could be argued that once the lease is rejected any claim for the holdover period would be subject to the normal standards for administrative expense contained in section 503(b). However, section 365(d)(4) states unambiguously that if the trustee does not assume or reject an unexpired lease within the sixty-day period "the trustee shall immediately surrender such nonresidential real property to the lessor." 11 U.S.C. § 365(d)(4). Here, the trustee failed to conform to the statutory requirement when he held over until January 21. The intent of Congress, evidenced both by the statutory language and the legislative history, makes clear that section 365(d) was amended to protect lessors from the risk of loss in bankruptcy cases due to the trustee failing to make timely provision for unexpired leases. To require Levy Brothers to meet section 503(b) standards for the hold-over period would thus undermine the express purpose of Congress and would violate section 365(d)(4) of the Code. The Levy brothers are entitled to the full recovery of its $9,750.00 claim as a priority administrative expense.