**In re CARDINAL INDUSTRIES, INC.**

**In Joint Administration With**

**Cardinal Industries of Florida, Inc., Debtors.**

**Bankruptcy Nos. 2–89–02779, 31–4427382 and 58–1419022.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Oct. 18, 1989.

Daniel J. Hunter, Richard K. Stovall, Thompson, Hine and Flory, Columbus, Ohio, and Robert K. Picker, Jr., Atlanta, Ga., for Crown Center Management Co.

David G. Heiman, Jeffrey W. Linstrom, Jones, Day, Reavis & Pogue, Columbus, Ohio, for debtors.

Charles M. Caldwell, Jr., Columbus, Ohio, Asst. U.S. Trustee.

## ORDER ON MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE RENT CLAIM

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on a motion by Crown Center Management Company ("Crown Center") seeking allowance and payment of a claim for rents under a lease entered into by Crown Center, as lessor, and one of the debtors, Cardinal Industries, Inc. ("CII"), as lessee. CII objected to the motion and the matter was heard by the Court.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### FINDINGS OF FACT

The facts in this matter are as follows:

1. Crown Center and CII entered into a lease on November 20, 1987 (the "Lease"). The Lease, as amended on December 11, 1987, pertained to two suites of office space in Atlanta, Georgia totalling 18,159 square feet (the "Premises");

2. The terms of the Lease provided for graduated payments after an initial period of free rent. At the time of CII's Chapter 11 bankruptcy filing on May 15, 1989, the monthly rental was $16,117;

3. Certain of CII's subsidiaries have used the Premises for business activities. However, as of July 1, 1989, neither CII nor any of its subsidiaries were conducting business from the Premises. However, the Premises have continued to be used for stor-

age of office furniture and modular office dividers;

4. CII admits that one copier being stored on the Premises is its property. It is not clear who owns the remaining office furniture and dividers. The Court presumes, however, that the stored goods were put there under the direction of CII or one of its subsidiaries.

5. If moved into one area, the stored equipment would occupy approximately one-third of the space leased in the Premises;

6. As of August 24, 1989 CII had failed to pay post-petition rent in the amount of $62,867.47, including $1,799.49 for common area maintenance. Under the terms of the Lease that sum increases by $545.48 each day.

7. On July 27, 1989 CII was granted an extension of time to determine whether it would assume or reject the Lease in accordance with 11 U.S.C. § 365(d)(3). On August 24, 1989 the Court entered an order authorizing CII's rejection of the Lease. That Order directed CII to remove the stored equipment and surrender the Premises to Crown Center as soon as practicable;

8. Crown Center currently is showing the Premises to prospective tenants. There is no evidence or contention that the presence of the equipment in the Premises has adversely affected Crown Center's efforts to relet that space.

## ISSUES OF LAW

The Court has been requested to determine the following issues:

1. What is the nature of Crown Center's claim for unpaid post-petition rents;

2. What is the measure or standard by which Crown Center's claim is to be determined;

3. What is the priority of Crown Center's allowed claim; and

4. When must Crown Center's allowed claim be paid?

## CONCLUSIONS OF LAW

A. *The Nature of Crown Center's Claim for Post–Petition Rent*

■ Generally, claims for post-petition goods or services, if allowable against a bankruptcy estate, are governed by the provisions of 11 U.S.C. § 503. That section provides in relevant part:

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

11 U.S.C. § 503(a) and (b)(1)(A).

This procedure, however, as it pertains to the requirement for notice and hearing, has been altered by certain amendments to section 365(d)(3) of the Bankruptcy Code enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, July 10, 1984, 98 Stat. 333. Section 365(d)(3), which specifically relates to obligations of the estate under unexpired leases of non-residential real property, provides in pertinent part:

The trustee shall timely perform all obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1) of this title* ... (emphasis added).

11 U.S.C. § 365(d)(3).

Section 365(d)(3) clearly indicates that rents which come due during the first 60 days of a Chapter 11 case are allowable as administrative expenses without necessity for the prior notice and hearing otherwise required by 11 U.S.C. § 503(b)(1). Many courts have reached this same conclusion. *See, In re Granada, Inc.,* 88 B.R. 369, 371

(Bankr.D.Utah 1988); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 972 (Bankr.E.D.Pa.1987); *In re Longua*, 58 B.R. 503, 505 (Bankr.W.D.Wis. 1986); *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr.E.D.N.Y. 1986). This Court agrees that Crown Center's claim for rents which accrued after the bankruptcy filing until CII rejected the Lease could and should have been paid as an administrative expense without notice to other parties or other opportunity for a hearing.

B. *The Measure of the Administrative Rent Claim*

■ Where a debtor has failed to make timely payments to a lessor as required by § 365(d)(3) and the lessor has had to seek relief from the Court, Courts have addressed the measure by which the amount of the landlord's administrative claim is determined.

Substantial authority exists that the rate provided by the lease agreement is the appropriate measure of the landlord's claim for rent during the period from the bankruptcy filing until the lease of non-residential real property has been assumed or rejected pursuant to 11 U.S.C. § 365(d)(3). *See Longua*, 58 B.R. at 505; *Granada*, 88 B.R. at 371–372; *In re Fisher & Fisher, Inc.*, 51 B.R. 680, 682–683 (Bankr.S.D.Ohio 1985). This approach acknowledges Congress' intent to protect landlords from harm which could result from the compulsory provision of services pending a debtor's decision to assume or reject an unexpired lease. Contrary authority also exists, however, for the proposition that the amount allowed for the claim must be shown to be reasonable and that the reasonableness requirement in 11 U.S.C. § 503(b)(1)(A) has not been completely abrogated by 11 U.S.C. § 365(d)(3). *Great Western Savings Bank v. Orvco, Inc. (In re Orvco, Inc.)*, 95 B.R. 724, 727 (Bankr. 9th Cir.1989).

■ The Court finds, however, that prior to the debtor's assumption or rejection of an unexpired lease, the measure of the lessor's claim shall be determined by the terms of the contract between the parties. Once the lease has been rejected, however, either by operation of the 60–day limit imposed by the statute, by any extension of that period, or by an order of the Court, and absent a hold-over which prevents a new tenant from entering into possession, the contract rate is not necessarily determinative of the amount of the administrative rent claim. "[O]nce the lease is deemed rejected, the lease rate no longer controls; instead, the debtor is only required to pay the reasonable rental value of the premises." *Corporate Property Investors v. Chandel Enterprises, Inc. (In re Chandel Enterprises, Inc.)*, 64 B.R. 607, 610 (Bankr. C.D.Cal.1986). As the Lease was rejected prior to the "hold-over" period, its terms do not prevent the Court from examining the benefit of services provided to the estate in arriving at the appropriate amount of the post-rejection administrative claim. *Fisher*, 51 B.R. at 683. Further, the allowance of such post-rejection claim may be subject to the notice and hearing requirements of 11 U.S.C. § 503(b).

■ CII and its subsidiaries have equipment stored on the Premises that, if consolidated into one area, would occupy approximately one-third of the leased space. And such storage has been the sole usage of the Premises since rejection of the Lease. Further, there has been no showing that such usage has adversely affected Crown Center's ability to show the Premises to prospective tenants. Therefore, for the period from August 24, 1989 until CII vacates the Premises, Crown Center's allowed administrative claim for rent for the 6,000 square feet actually in use shall be calculated at approximately one-half the contract rate or $6.50 per square foot per month. That CII permitted its subsidiaries to use the equipment prior to its storage does not change the result.

C. *The Relative Priority of Crown Center's Administrative Rent Claim*

■ Having determined that Crown Center's claim is an administrative expense claim measured by the Lease terms until rejection and measured by the benefit to

the estate after rejection, the Court next must determine the priority of such claim.

Administrative expense claims are given priority status under 11 U.S.C. § 507(a)(1). In addition, some courts have held that the language of 11 U.S.C. § 365(d)(3), requiring payment to a lessor of non-residential real property during the first 60 days of a case or until the debtor determines to assume or reject the lease, creates a super-priority status for those lessors' administrative rent claims. And the requirement that "the trustee shall timely perform all obligations of the debtor" has been held to create an obligation independent of the normal standards for administrative expense claims. *Longua*, 58 B.R. at 505. Section 365(d)(3), therefore, may impose a strict and inflexible requirement on a trustee or debtor in possession to pay such expenses immediately. *See also, In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415 (D.Mass.1987). And if such claim has a super-priority status, payments may not be recoverable if the estate has insufficient funds to pay all administrative expense claims.

This Court, however, is persuaded by those courts which have adopted the rationale that "had Congress intended to create a super-priority for sub-section 365(d)(3), it would have done so by express statutory language." *In re The Tandem Group, Inc.*, 61 B.R. 738, 742 (Bankr.C.D.Cal.1986); *Orvco*, 95 B.R. at 728; *In re United West, Inc.*, 87 B.R. 138, 140 (Bankr.D.Nev.1988).

This holding is buttressed by a review of the several sections in the Bankruptcy Code which expressly grant claimants a priority higher than other first priority administrative claimants. Those provisions include 11 U.S.C. § 507(b) (priority for inadequate protection under § 361), 11 U.S.C. § 364(c)(1) (priority for post-petition lenders), and 11 U.S.C. § 726(b) (priority for payment of Chapter 7 administrative expenses before Chapter 11 administrative expenses in converted cases). None of these sections or any other provisions mandate similar treatment for unpaid post-petition rental obligations under unexpired leases of real property, and this Court is

unwilling to graft such a gloss onto the statute. The Court of Appeals for the Sixth Circuit also has indicated a narrow reading for the preferential payment of claims generally by stating:

> If one claimant is to be preferred over others, the purposes should appear from the pertinent statutes ... To prioritize ... claims where they are not clearly entitled to such treatment, is not only inconsistent with the policy of equality of distribution but it also dilutes the value of the priority for the claims of creditors Congress in fact intended to prefer.

*Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106 (6th Cir.1987).

This holding means that payments made to Crown Center for its administrative expense claim which arises under 11 U.S.C. § 365(d)(3) are merely payments to a priority administrative expense claimant which are subject to total or partial recovery by the estate upon order of the Court if all other administrative claimants of equal priority are not paid in full. *See Dieckhaus*, 73 B.R. at 973. Therefore, the priority of Crown Center's administrative expense claim is equal to that of other claimants with priority under 11 U.S.C. § 507(a)(1).

D. *The Timing of Payment to Crown Center*

■■■ Finally, the Court must determine when Crown Center should be paid. It is an important policy underlying the Bankruptcy Code that a debtor's limited resources are to be equally distributed among all creditors with the same priority. Implementation of that policy requires the Court to exercise its discretion in permitting payment of allowed administrative expense claims. Prior to such payment, the Court should consider the status of the case, the likelihood that all administrative expense claimants will be paid in full, and the ability of the claimant to repay any amount which later turns out to be in excess of payments to other administrative expense claimants.

Given the expressed statutory intent for prompt payment of rents for leased non-

residential real property pending assumption or rejection and given Crown Center's stated willingness to return promptly to the estate any portion of such payments later found to be improvident, the Court believes the portion of Crown Center's claim attributable to the period from May 15, 1989 until August 24, 1989 should be paid by CII at this time. The remainder of the allowed administrative claim attributable to the post-rejection period shall be finally determined and paid along with all other administrative expense claims upon confirmation of a plan or other final distribution in this case.

## CONCLUSION

Based upon the foregoing, the Court orders that Crown Center Management Company shall be, and the same hereby is, entitled to the allowance of an administrative expense claim for post-petition rents owed by the debtor, Cardinal Industries, Inc. Such administrative expense claim shall be allowed at the rate provided by the Lease from CII's bankruptcy filing on May 15, 1989 until August 24, 1989, the date CII rejected the Lease under 11 U.S.C. § 365(d)(3). This portion of the claim shall be paid immediately upon the entry of this order, subject to possible repayment in part should assets of this estate be insufficient to pay all administrative claims of equal priority.

For the period subsequent to August 24, 1989, Crown Center's claim shall be allowed in an amount calculated at $6.50 per square foot per month for 6,000 square feet. That portion of the claim shall be paid on a pro rata basis with all other administrative claims at a later time in this case.

IT IS SO ORDERED.