## In re K–FABRICATORS, INC., Debtor.

### No. 91–30749T.

United States Bankruptcy Court,
W.D. Washington.

Jan. 16, 1992.

**656**

Dennis Casey, Tacoma, Wash., for debtor.

Mark D. Waldron, Talbot, Orlandini & Waldron, P.S., Tacoma, Wash., Trustee.

James J. Mason, Preston Thorgrimson Shidler Gates & Ellis, Tacoma, Wash., for Port of Tacoma.

## DECISION

PHILIP H. BRANDT, Bankruptcy Judge.

The questions for decision are:

First, the timeliness of the Port of Tacoma's request for payment of rent as an administrative expense and of the Trustee's objection to that request and its claims;

Second, the nature and extent of the Port of Tacoma's rent claim; and

Third, whether, in addition to rent, the Debtor is liable for Washington's public leasehold tax.

### I. FACTS

Debtor K–Fabricators, Inc. entered into a written two-year lease agreement with Leo and Cleo Krenzler for warehouse and fabrication space. The agreed rent was $7,000 monthly, and K–Fabricators was not directly or indirectly obligated to pay real property taxes. About one year into the lease, the Port of Tacoma, a Washington municipal corporation, purchased the property from Krenzlers, taking an assignment from the Krenzlers of the K–Fabricators lease in the transaction. The record does not disclose any consent to the assignment by K–Fabricators.

RCW Chapter 82.29A imposes a 12% excise tax on leaseholds of publicly-owned real property, and requires the public lessor to collect and remit the tax to the state. The Port attempted to collect the tax; K–Fabricators resisted, taking the position that it had only agreed to pay $7,000 per month. The record does not disclose any enforcement proceedings.

On 18 February 1991, K–Fabricators filed for Chapter 7 relief, and on 2 April 1991, the Port filed a secured claim of $32,659.51, asserting a landlord's lien under RCW 60.72.010. The Port sought $7,898.80 per month from December 1990 through March 1991, plus a charge for installation of sprinklers.

The claims bar date was 24 June 1991, and the lease was never assumed by the Trustee. Personal property of the estate was stored in a 28,000 square foot building, part of the leased premises, from the date of filing until sold at auction (free and clear of liens) on 20 June 1991.

In October, the Port filed a Motion for Order Directing Payment of Secured Claim, asserting a lien for two months's rent (including leasehold tax) under RCW 60.72.-010. The Trustee filed a response, objecting. The matter was not decided at the hearing set 29 October, following which the Port filed its Motion for Payment of Administrative Rent Expenses on 12 November 1991, seeking $42,028.64 (rent at the leasehold rate, together with the leasehold tax, from 19 February through 30 June 1991). The Trustee filed an Amended Objection to Claim, objecting on the basis of 11 U.S.C. § 545(3) to the allowance of any portion of the Port's claim as secured, noting hearing for 3 December 1991.

Prior to the 3 December hearing, the Port filed the Affidavit of Robert J. DeWald, its Senior Director for Industrial Development and Real Estate, stating his opinion that $7,000 per month is a reasonable rental for the property, and the Trustee was granted permission to employ an appraiser.

The hearing was continued to allow Rory Turner, the Trustee's appraiser, to complete his report, and concluded on 7 January 1992.

Mr. Turner, a commercial real estate broker, evaluated building and concluded the lease value was $.16 per square foot, rounded to $4,500, per month. In response, the Port filed a Supplemental Affidavit of Mr. DeWald, taking issue with Mr. Turner's analysis on two grounds: first, that only the building, and not the 32,400 square feet of outside space (worth, by his calculation, $2,015 per month) was valued; and second, that $.16 per square foot was

inappropriate for the manufacturing facility at issue, which Mr. DeWald submits has a value of $.19 per square foot ($5,320) monthly.

## II. CONTENTIONS

The *Trustee* acknowledges the Port is entitled to an unsecured claim for pre-filing rent, and an administrative claim for reasonable post-filing rent. Since the lease was automatically rejected, 11 U.S.C. § 365(d)(1), and *In re Orvco, Inc.*, 95 B.R. 724 (BAP, 9th Cir., 1989) controls, the Trustee argues the Port is entitled the reasonable value to the estate of the premises (as an unsecured claim for pre-filing use and occupancy, and, if the Port's 12 November motion was timely, as an administrative expense while the property was used to store the equipment post-filing). The Trustee also questions the timeliness of the Port's claiming of administrative expense priority in that motion, filed approximately four months after the claims bar date.

The Trustee notes that the Debtor never agreed to pay any leasehold tax, and that the tax results from unilateral action taken by the Port in acquiring the property during the term of the lease. The Trustee argues that the tax should be a cost borne by the Port, because it benefitted from having ownership and control of the property, and that it would be inequitable to impose that cost on the estate.

Finally, the Trustee argues that no administrative expenses should be paid at this time, as the total of administrative expenses is uncertain.

*Debtor* joins the Trustee's arguments.

The *Port* does not dispute the Trustee's power to avoid a lien for rent, but seems to argue that, since the sale was free and clear of liens, somehow its lien withstands that power. The Port also questions the timeliness of the 14 November objection, arguing that it properly filed its claim before the bar date, and that its motion is a proper method to obtain payment, because a request for payment of an administrative expense (under 11 U.S.C. § 507(a)) is not identical to a claim, and the bar date is

inapplicable. At hearing, the Port conceded that it would not be entitled to immediate payment.

Finally, the Port asserts that the Dewald Affidavit establishes $7,000 per month as a reasonable rent, that it is only an agent and has no discretion in collecting the leasehold tax, and that an offset would be inappropriate, as there is no benefit to the Port from the tax.

As noted above, the *Trustee* contends the reasonable value to the estate was $4,500 per month, as only the building was used, and only for warehousing purposes.

## III. DISCUSSION

■ *Timeliness:* 11 U.S.C. § 503 governs administrative expenses, and, in contrast to 11 U.S.C. § 501, calls for the filing of a "request for payment", rather than a "proof of claim". The Order which set the 24 June 1991 bar date calls for "creditors" to file proofs of claim, but does not purport to deal with requests for payment of administrative expenses: 11 U.S.C. § 101(10) defines "creditor" as an entity having one of several types of claim arising at or before the entry of an order for relief, or treated that way by operation of other sections. Since an entity need not be a creditor to be entitled to administrative expenses, and that entitlement, by definition, arises after filing of the case, the bar date order is inapplicable to the Port's motion.

■ Likewise, there is no deadline specified in Bankruptcy Rule 3007 for objections to claims. As noted in King, ed., 3 *Collier on Bankruptcy* ¶ 502.01[3], at 502–15:

A cutoff date would be inappropriate for in many cases it may not be known until late in the administration of the case whether there will be any dividend so that a useful purpose would be served by the making of the objection by the trustee.

*Collier's* footnotes the quoted sentence with the observation that 11 U.S.C. § 704(5) requires the trustee to object to the allowance of improper claims "if a purpose would be served.", and that neither the trustee nor court should be burdened

by requiring inconsequential objections, when there are no funds for distribution to such claims. Thus, the Trustee's objection is timely, and the Port concedes, in that event, that it is well-taken.

■ *Nature and Extent:* The Port has not cited any authority for its contention that the sale of the personal property free and clear of liens transforms its otherwise avoidable landlord's lien into one surviving the Trustee's timely objection. A sale pursuant to 11 U.S.C. § 363(f) does not establish the validity of a claimed lien, which requires an adversary proceeding. Bankruptcy Rule 7001.

■ The Port is entitled to an unsecured claim for the pre-filing rent, and an administrative claim for the fair and reasonable rental value of the property used by the estate post-filing. *In re Dant & Russell, Inc.,* 853 F.2d 700 (9th Cir.1988); *In re Thompson,* 788 F.2d 560 (9th Cir.1986).

■ *Leasehold Tax:* 11 U.S.C. § 505(a) empowers this court to determine amount and legality of any tax on the debtor not previously contested.

■ *In Pier 67, Inc. v. King County,* 78 Wash.2d 48, 469 P.2d 902 (1970), *cert. den.,* 401 U.S. 911, 91 S.Ct. 876, 27 L.Ed.2d 810 (1971), the Washington Supreme Court invalidated the methodology used from the early part of this century to determine the taxable value of leasehold interests on public lands. Thereafter the Washington Legislature enacted the "in lieu" excise tax for leases of public lands presently codified as RCW 82.29A: the history is set forth in *Duwamish Warehouse Company v. Hoppe,* 102 Wash.2d 249, at 251–154, 684 P.2d 703 (1984).

The tax is:

... a leasehold excise tax on the act or privilege of occupying or using publicly owned real or personal property *through a leasehold interest* on or after January 1, 1976, at a rate of 12 per cent of taxable rent: ... RCW 82.29A.030 [emphasis added].

RCW 82.29A.020(1) provides:

"Leasehold interest" shall mean an interest in publicly owned real or personal property *which exists by virtue of* any lease, permit, license, or any other *agreement,* written or verbal, *between the public owner* of the property and a person who would not be exempt from property taxes if that person owned the property in fee, granting possession and use, to a degree less than fee simply ownership: ... [emphasis added]

K–Fabricators, a private corporation, is not exempt from property taxes.

There is no taxable "leasehold interest" in the present case: K–Fabricators negotiated with private landlords, rather than a public owner. The essential statutory predicate, an agreement with a public owner, is missing. This analysis is buttressed by the purpose section of the leasehold excise tax chapter, RCW 82.29A.010, in which the Legislature recognized that, notwithstanding Washington's constitutional exemption of publicly-owned property from property taxes, private lessees of such properties receive substantial [property tax-funded] benefits from local units of government. As noted in *Duwamish Warehouse,* at 253, 684 P.2d 703:

Where private land is leased, the entire estate including the fee, the leasehold and any improvements thereon, is assessed and taxed as a unit with the burden of paying the taxes being a matter of contract between the lessor and lessee.

The lease from Krenzlers does not require K–Fabricators to pay the real property taxes, and, absent such a provision, the tenant has no duty to do so. W. Stoebuck, *The Law Between Landlord and Tenant in Washington:* Part II, 49 Wash.L.Rev. 1013, 1035 (1974). There has been no showing of any increase in the government services provided to K–Fabricators as a result of the Port's acquisition of the property; if the (presumably fair) compensation governmental entities previously received from the Krenzlers ceased upon the Port's purchase, K–Fabricators is not responsible, and it ought not be charged equitably with any consequences.

■ Even if the analysis in this part is incorrect, and the leasehold tax is payable in such circumstances, the value of the

# 659

property to the estate would be reduced by the amount of any tax due.

## IV. REASONABLE RENTAL VALUE

The estate is liable for post-filing rent as an administrative expense for the portion of the leased premises actually used. As to that portion, the amount of the administrative claim is to be determined by the "objective worth" standard: the fair and reasonable value of the lease. The contractual rental rate is presumed fair and reasonable, but that presumption may be rebutted, and is limited by the fair and reasonable value of the lease on the open market, and by the estate's actual use. Further, the administrative expense determination is not compensatory, but equitable, to prevent unjust enrichment. *In re Dant & Russell, supra,* at 707, and cases cited therein.

Application of these principles requires, in this instance, two determinations: what property was actually used by the estate, and whether the rental rate should be that for storage premises, rather than that for manufacturing premises.

The Trustee asserts that the estate used only the building, and only for storage purposes; these assertions are not controverted by the Port. Clearly, the Port cannot be awarded administrative rent for the outside space. Respecting the second question, whether the applicable rate is the market rate for manufacturing space, or that for warehouse space is appropriate, it is clear that the value the estate obtained was limited to that of storage space.

There is nothing in the record suggesting that the Port had other potential tenants ready to pay the higher rate for manufacturing space, or that it was precluded from showing the property in an effort to obtain such tenants. Nor did the Port move to require the Trustee to vacate the premises. There is no equitable reason to impose the higher manufacturing rate on the estate. See, *In re Bilyk,* 101 B.R. 586 (Bkrtcy. E.D.Mo.1989); *In re Cardinal Industries, Inc.,* 109 B.R. 738 (Bkrtcy.S.D.Oh.1989) (where the claims for administrative rent for business premises only used for stor-

age were limited to rates reflecting the character of the actual use by the estates).

Mr. Turner's valuation for the Trustee was of space used for bulk or dead storage, and he arrived at a rate of $.16 per square foot. The Port's challenge to this rate, set forth in Mr. DeWald's supplemental affidavit, does not take issue with that as an appropriate rate for warehousing space, but focuses the appropriate rate for manufacturing facilities in asserting that $.19 per square foot is appropriate. I conclude that $.16 per square foot is the appropriate rate for rent as an administrative expense.

## V. CONCLUSION

The Port is entitled to the rent due at the lease rate to the date of K–Fabricators' petition, and to an administrative expense claim for rent at the rate of $4,500 per month while the property was used by the Trustee for storage. The estate is not liable for the leasehold tax, either before or after the petition.