TRIZECHAHN 1065 AVENUE
OF THE AMERICAS,
L.L.C., Appellant,

v.

THOMASTON MILLS, INC.,
Appellee–Debtor.

No. 5:01–CV–496–1(WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 14, 2002.

Molly Lorna McCollum, Macon, GA, for appellant.

Brad A. Baldwin, Atlanta, GA, for appellee.

OWENS, District Judge.

This matter is before the Court pursuant to 28 U.S.C. § 158(a) on appeal from the Bankruptcy Court of the Middle District of Georgia, Macon Division. On October 24, 2001, the Bankruptcy Court entered a final order denying Trizechahn's request for the Allowance of Chapter 11 Administrative Expenses. Trizechahn (hereinafter "the Lessor") appeals the denial of (1) rent allegedly owed by the Debtor to the Lessor for the Debtor's possession of the subject premises, (2) the determination of the time period for which rent was owed and (3) the denial of real estate taxes and fuel escalation charges billed to the Debtor.

## I. Factual and Procedural Background

This case involves the rejection of a nonresidential lease and payment of postpetition obligations in a Chapter 11 bankruptcy case. The bankruptcy petition was filed on June 19, 2001. At that time, the Debtor was party to a lease with the Lessor for 24,216 square feet of commercial space located at 111 West 40th Street a/k/a 1065 Avenue of the Americas, Suite 700 in New York, New York. On July 31, 2001, the Debtor filed a Motion for an Order Authorizing Rejection of the lease. After a hearing, the Bankruptcy Court entered

an Order on August 29, 2001 giving court approval for rejection of the lease. There is no dispute that the Debtor did not vacate the premises and turn over the keys until September 26, 2001 [1]. The regular monthly rent payment was $63,358.23 which included an electricity charge and an operating expense installment. The Debtor has only paid a pro-rated portion of the August 2001 rent and real estate taxes through August 22, 2001 [2]. The Lessor also contends that $16,603.10 in real estate taxes billed August 1 and a fuel adjustment charge of $6,616.80 billed September 1 should be paid as Chapter 11 administrative expenses. The Debtor contends it does not owe rent, taxes or any other expenses past the date the Bankruptcy Court approved the rejection of the lease—August 22, 2001. The Debtor also contends that, since the property was no longer being used as a showroom after that point, if any rent is due the Lessor should not get 100% of that month's rent. The Debtor argues for a pro-rated amount reflecting the August 22 date and the use to which the property was put until September 2001. The Bankruptcy Court held in favor of the Debtor and did not allow these expenses. The Bankruptcy Court also stated that the use to which the property was put during August and September was important in determining what amount if any was owed to the Lessor.

## II. Discussion

### A. Assessing the Appropriate Amount of Expenses Due

 Pursuant to 11 U.S.C. § 365 dealing with executory contracts and unexpired leases in Chapter 11 cases,

The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding* section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.

[I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall *immediately* surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(3), (4) (2001). Section 503(b)(1) provides that

After notice and a hearing, there shall be allowed, administrative expenses ... including the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ... [and] any tax ... incurred by the estate ....

Contrary to the Debtor's contentions, the normal requirements imposed on administrative expenses by section 503(b)(1) do

1. Although in the appellate brief the Lessor contends September 19 was the date Debtor vacated the premises, testimony at the hearing before the Bankruptcy Court indicates the date was actually the 25 or 26 of September. As will be discussed more thoroughly later, the exact date in September is not important

because the terms of the lease required rent to be paid for the whole month in advance.

2. This was the date of the oral Order from the Bankruptcy Court that rejected the Lessor's request for these expenses.

not apply in this case because § 365(d)(3) provides that "*notwithstanding* section 503(b)(1) of this title" the Debtor's obligations are to be paid by the trustee. Under § 503(b), trustees must normally analyze whether a payment of certain obligations is designed to preserve the estate and thus the "concepts of accrual, proration and allocation" are necessary to distinguish between prepetition debts and administrative expenses. *In re Krystal Company,* 194 B.R. 161, 163 (Bankr. E.D.Tenn.1996). This analysis is not necessary when § 365(d) is applicable. Further, since § 365 does not provide for specific statutory definitions of any of the terms contained therein, the plain meaning of the terms must be applied. Accordingly, the common sense, plain-meaning interpretation of "all obligations of the debtor" include rent, real estate taxes and any other charges or expenses provided for in the lease. There are numerous cases that follow this interpretation based on the legislative history behind the statute.

The current version of § 365(d) was promulgated pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984. The remarks of Senator Hatch indicate the apparent need to protect lessors in these type of cases. Senator Hatch noted

> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code....

> The ... problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants accord-

ing to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

> The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease. For cause the court can extend the time for performance of obligations due during the first 60 days after the order for relief, but not beyond the end of such 60-day period. At the end of this period, the amounts due during the first 60 days would be required to be paid, and thereafter, all obligations must be performed on time. This permissible 60-day grace period is intended to give the trustee time to determine what lease obligations the debtor has and to locate the cash to make the required payments in exceptionally large or complicated cases.

*In re Longua,* 58 B.R. 503, 505 (Bankr.W.D.Wis.1986)(citing 130 Cong. Rec. S8994–95 (daily ed. June 29, 1984) (remarks of Senator Hatch) as quoted in *In re By–Rite Dist., Inc.,* 47 B.R. 660, 664–65 [12 B.C.D. 1082] (Bankr.D.Utah 1985). *Reprinted in S & F Concession, supra,* 55 B.R. 689, 13 B.C.D. at 1120).

In *In re Longua,* the issue was whether the bankruptcy trustee was required to pay the full contractual amount of rent

pursuant to § 365(d) for the period when the debtor remained in possession of the premises after the initial 60–day period. The trustee argued that because the premises "were used only for warehouse purposes and did not suffer the normal wear and tear of a retail establishment the estate should only be charged the 'warehouse' value of the premises." *Longua*, 58 B.R. at 504. The court rejected this argument and held in favor of the lessor. The court stated, "The intent of Congress, evidenced both by the statutory language and the legislative history, makes clear that section 365(d) was amended to protect lessors from the risk of loss in bankruptcy cases due to the trustee failing to make timely provision for unexpired leases." *Id.* at 506. "To require [lessors] to meet section 503(b) standards for the hold-over period would thus undermine the express purpose of Congress and would violate section 365(d)(4) of the Code." *Id.* The court allowed the full amount of the rent. *See also In re Western Monetary Consultants*, 100 B.R. 545, 547–48 (Bankr.D.Colo.1989) (exclusion of third parties from use of property negates debtor's argument that property was not fully utilized); *In re Texaco*, 254 B.R. 536 (Bankr.S.D.N.Y. 2000)(when debtor continues to derive benefits under a lease, the debtor will also be burdened with the obligations thereunder).

Another case analyzing this issue found that "Congress specifically intended to except a tenant's lease obligations to his landlord from the working of the Code's administrative expense provision because Congress believed nonresidential landlords and their other solvent tenants were particularly vulnerable creditors under the old procedures." *In re Krystal Company*, 194 B.R. at 164. "Rather than forcing the landlord to take the initiative, apply for, and wait for an administrative expense allowance, as it was required to do before 1984, Congress intended § 365(d)(3) to shift the burden of indecision to the debtor; the debtor must now continue to perform all the obligations of its lease or make up its mind to reject it before some onerous payment comes due during the prerejection period." *Id.*

This position is further supported by analysis of applicable cases in *Collier on Bankruptcy*. *Collier on Bankruptcy*, Vol. 3:365 (Lawrence P. King 15 ed. revised 2001). In that treatise, it is noted the "1984 Amendments have significantly modified the postpetition obligations of a trustee in possession of nonresidential real property which had been leased to the debtor" *Id.* at ¶ 68.03[5]. "Section 365(d)(3) has abrogated the use and occupation doctrine with respect to nonresidential real estate leases." *Id.* "Under section 365(d)(3), postpetition payment and performance of all lease obligations are required without qualification as to the nature and extent of the trustee's use of the premises." *Id.* (citing *In re Longua*). Further, "[t]he apparent purpose of [the immediate surrender] provision is to afford landlords the full measure of relief mandated by the policy of expeditious disposition of nonresidential real estate leases and to dispel any notion that the trustee could retain possession of the premises to the extent necessary to protect and preserve the other assets of the estate." *Id.* at ¶ 63.03[1]. The treatise also addressed the suggestion by some cases of lifting the automatic stay and permitting the landlord to pursue its state law eviction remedies against the debtor. *Id.* However, it is noted the "better approach in a case involving a lease of nonresidential real property is to analogize to section 365(d)(4) and to require the debtor to surrender leased premises after rejection of the lease, without the necessity to suffer further delay by engaging in eviction proceedings under nonbankruptcy law." *Id.* at ¶ 365.09[4].

A long line of cases supports this reasoning. More important, the appropriate course of action in this instance is to enforce the statute as written and order the trustee to perform the obligations of the debtor: i.e., pay the rent, taxes and any other charges incurred pursuant to the lease. Congress made its intent patently clear in § 365(d), therefore this Court must follow the language and direction of that statute absent a showing of unconstitutionality. There has been no such showing in this case. Rather, cases have consistently held that the Lessor is entitled to the payment of these contractual obligations. *See In re Homeowner's Outlet Mall Exchange, Inc.*, 89 B.R. 965 (Bankr.S.D.Fla.1988) (allowed payment of real estate taxes, electrical bills, insurance premiums and interest penalties for late payments under nonresidential lease for period during and beyond the initial 60–day period); *In re Krystal Company*, 194 B.R. 161 (Bankr.E.D.Tenn.1996) (debtor obligated to pay landlord for property taxes which became due postpetition and prerejection); *In re Western Monetary Consultants*, 100 B.R. 545 (Bankr.D.Colo. 1989)(amount of rent allowed as administrative expense claim is valued using an objective worth standard that measures the fair and reasonable value of the lease but a rebuttable presumption exists that the contractual rental rate is fair and reasonable); *In re JAS Enterprises, Inc.*, 180 B.R. 210 (Bankr.D.Neb.1995)(allowed postpetition rent at rate provided for in lease for the period in which the debtor remained in possession of the property). One court held that "this is an issue of law and not one of equity." *In re CHS Electronics, Inc.*, 265 B.R. 339, 343 (Bankr.S.D.Fla.2001). "Section 365(d)(3) was intended by Congress to protect commercial landlords who were forced to provide current services without current payment pending a debtor/lessor's decision whether to assume or reject an unexpired lease." *Id.* (citations omitted). "Although policy and social justice may seem to call for a contrary result, this Court will not be the first to bring to legislative attention 'the detrimental effect of section 365's application in cases like the one at hand,' but nonetheless enforce the statute according to its plain language." *Id.* at 344. "Moreover, the seemingly harsh result to the Debtor could have easily been avoided." *Id.* The Debtor could have rejected the lease and vacated the premises upon the bankruptcy filing or soon thereafter and "significantly limited, if not completely obviated this administrative expense." *Id.* It is clear from a close reading of § 365(d) and applicable case law that the Lessor is entitled to the expenses claimed.

## B. Determining the Appropriate Time Period for Expenses Due

The Debtor contends that if any amount of rent is due for September 2001, it should only be for the exact number of days the premises were occupied. The Lessor argues that the full amount of September's rent is due however because the lease provides that rent is due in advance on the first of each month. There is support for the Lessor's argument. In *In re Koenig*, the court addressed this issue and noted that

> section 365(d)(3) was, at the least, intended to assure the landlord payment of ordinary monthly rent payments which become due during the postpetition prerejection period. Since Congress was no doubt well aware that rent is usually paid monthly in advance, it is not really possible to reconcile section 365(d)(3) with according the Debtor the option not to pay its monthly rent when due, even though payment would impinge to some extent upon normal bankruptcy principles and priorities.

*In re Koenig Sporting Goods, Inc.*, 203 F.3d 986, 988 (6th Cir.2000). In *Koenig*, the Debtor was obligated under the lease to pay $8,500 in advance on the first day of each month for that month's rent. *Id.* at 989. The court held that under those "circumstances, § 365(d)(3) is unambiguous as to the debtor's rent obligation and requires payment of the full month's rent." *Id.* Based on the plain meaning of § 365(d) and the foregoing caselaw, it is clear the Lessor is entitled to the full amount of rent for August and September 2001.

## III. Conclusion

The trustee is ordered to immediately pay the Lessor (1) the remainder of the rent not paid for August 2001, (2) the full amount of rent owed for the month of September 2001, (3) real estate taxes in the amount of $16,603.10 as billed in August 2001 and (4) the fuel charge of $6,616.80 as billed in September 2001. In accordance with the line of cases allowing these payments, it is noted that in the event sufficient funds are not available to pay all administrative claims this payment is subject to the trustee's right to seek recovery of all or part of the payment. This payment shall be paid pro rata with the other administrative expenses and in priority.